3-10-0885 People of the State of Illinois, a plea by Donald Duffy v. Ramon Stephens, appellant by Andy Boyd. You may proceed. Good afternoon, Your Honors. Andy Boyd from the State Appellate Defender's Office on behalf of Defendant Ramon Stephens. If it pleases the court, counsel, in this case the defendant was tried by a jury and was convicted of the offense of possession of between 30 and 500 grams of cannabis with intent to deliver. He was sentenced to five and a half years incarceration. Now I've presented three issues on appeal. The first is whether there was sufficient evidence to convict the defendant of possession with intent to deliver. The second, whether the defendant's DNA assessment should be vacated pursuant to Marshall and his state concedes this issue. And the last issue is whether the state presented an evidentiary basis for defendant's street value fine. Today I'd like to focus on the first of those issues, whether the state presented sufficient evidence to demonstrate that the defendant had an intent to distribute the cannabis. The first thing I'd like to point out, Your Honors, is that we concede that the defendant was in possession of cannabis. We are not asking for outright reversal in this case. What we're asking for is that this court reduce the conviction from a Class III possession with intent to deliver felony to a Class IV felony of simple possession and order the defendant resets on that Class IV felony. Our argument is that the state didn't present sufficient evidence to show intent to deliver and that the amount of cannabis it issued, 203 grams, which is roughly seven ounces, is a personal use amount when it's split four ways. Particularly when the court might consider that this group may well have been buying in bulk in much the same way that a family might buy groceries or, for example, household supplies when they go to a place like Costco. Now the first thing I'd like to point out is that there was not any direct evidence that the defendant intended to distribute this cannabis. The state's star witness, Mr. Edmonds, did not testify that the defendant or anybody else in this group intended to distribute the cannabis. One of the officers that testified, Officer Bogorowicz, took statements from everybody in this group and he did not testify that anybody stated that they were going to distribute this cannabis. So there was no testimony from anybody, specifically including the defendant, that said that anybody was going to distribute this cannabis. Now under the applicable case law, in particular Robinson, the state must prove intent to deliver by circumstantial evidence. Now the case law that I referred to in my brief, particularly Robinson and Sherrod, tells us that the question of whether there is an intent to deliver has to be decided on a case-by-case basis. That determination is based on a number of factors. The only factor the state presented evidence on in this case was whether the quantity of the drugs was too large for personal use. Isn't that the typical situation where possession with intent to deliver? Well, there can be and there are situations in which some of these other factors are presented by the state. Things like the high purity of the drugs. These are the factors that the Robinson court points out. The possession of weapons, for example. The possession of large amounts of cash. The possession of things like police scanners or beepers or other drug trafficking paraphernalia like scales or the manner in which the substance was packaged. I mean, Schaefer, there was testimony in this trial that Schaefer said that personal consumption is usually around 28 grams, right? He did testify to that, Your Honor. But what he also testified to was that if this amount of cannabis was split four ways, that would be right on the borderline of what was, in his opinion, a personal use amount. And when he was asked on cross-examination what his opinion was if this amount of cannabis was split five ways, his response was that, well, it's more likely that this is a personal use amount. So what we've got here on Officer Schaefer's testimony as to the only factor that the state presented regarding possession with intent to distribute was that this is right on the borderline. This is right on the borderline between a personal use amount and what could be considered a distribution amount. So we've got a conviction here for possession with intent to distribute that relies only on the amount of cannabis and only on Officer Schaefer's subjective opinion of distribution amount. Now the reason I'm asking these questions is because under Collins, we're talking circumstantial evidence, and that's what this is, about whether it's for the intent to deliver. But under Collins, we're not supposed to second-guess the jury under the Collins standard, isn't that right? Your Honor's right, but I think what the court can do, and in my humble opinion, what the court has an obligation to do, the light most favorable in a prosecution can't simply mean that we're going to take Officer Schaefer at his word without questioning his conclusion. I do understand that there's a high standard here, but I think it's important to point out that there's lots Officer Schaefer doesn't know about the intention of the four individuals in this car that was pulled over. All he knows is that they've got 203 grams of cannabis, roughly seven ounces. He doesn't know what their intention is because there wasn't any testimony to that. And in fact, I should point this out, the state's star witness, Mr. Edmonds, who agreed to testify truthfully in exchange for a plea bargain here, didn't testify that anybody in this group, including the defendant, had any intention to distribute this cannabis. Okay, this is where I have a logical problem with your argument. If somebody takes 203 grams and breaks it up into four packets, that's distribution. Doesn't every distributor take a larger amount and break it into smaller amounts so that it can be personally consumed? I would argue that it's possible that this... And the fact that he intended to break it into four piles or five piles or six piles actually defeats... When a group of individuals procures an amount of a controlled substance, there was just a very recent case on this that came down from the second district. This is the Coots case, 2012, they'll have a second. And one of the things that the Coots court talked about was that there's no intent to deliver if a group of people share the drugs that they procure jointly. And that's what happened in this case, at least that's our argument, is that this group went up there and jointly procured these drugs together. We don't dispute that the defendant was in possession of this. We don't dispute that the joint possession part is. But what Coots says is that there can't be any intent to deliver if a number of individuals procure a controlled substance jointly and then split it up amongst themselves. Okay, so it wasn't split up when it was recovered, though. No, they hadn't gotten home yet, Your Honor. They were apprehended... Is there evidence they pooled their money to purchase this? I don't recall any specific evidence on exactly how this cannabis was paid for or whether there was any pooling of resources, Your Honor. I have to concede that I don't recall that for a record. I don't think it's in there. The first problem with the conviction here for intent to distribute, again, is Officer Schaffer's subjective opinion. The second thing that we'd like to point out is that there's, in our view, a much more likely explanation for the amount of cannabis that this group had. And that is that they were buying in bulk for their own personal use. The source they had apparently was located in Harvey, Illinois, which is roughly 120 miles from Bloomington. Nobody in their right mind would drive 120 miles for a dime bag of cannabis, just like nobody in their right mind would drive 120 miles for a single loaf of bread. If a group of people was going to make that drive all the way up to Harvey, they were going to make it worth their while. It only makes sense that they would make it worth their while by stocking up, whether it would be on cannabis or whether it would be stocking up on things like groceries or household supplies at a place like Costco. And so the bottom line of our argument is that there isn't any other evidence of intent to distribute in this case other than the amount at issue. All these other Robinson factors are simply not present in this case. And the state has to rely solely on Officer Schaffer's testimony that this was a distribution amount. And he testified across his admonition that this was right on the borderline between a distribution amount and a personal use amount. And it's also worthwhile to point out, Your Honors, I think that the legislature recognizes that it's possible to possess large amounts of cannabis without having intent to deliver. There is a simple possession statute that indicates that possession of over 5,000 grams, simple possession of over 5,000 grams is a Class I felony. That statute doesn't say anything about intent to deliver. So it's entirely possible, according to the legislature, to possess much larger amounts of cannabis than this group possessed and not have any intent to distribute. So what we've got here is a case where all we've got is 200 grams of cannabis, seven ounces. It fit into a shoebox, Your Honors. It's such a small amount that it fit into a shoebox. This morning, poking around on Westlaw, I stumbled across a Tennessee case, which obviously would not be binding on Your Honors. This is a foreign case, and I do understand that. But I thought I'd present it to Your Honors. You may find it persuasive. In this case, there was an agent of something called the West Tennessee Drug Task Force, and he testified that an ounce of marijuana is equivalent to roughly 10 packs, which is one carton, of cigarettes. So what we've got here is four individuals possessing roughly seven ounces of cannabis, which is split four ways, roughly the equivalent of less than two cartons of cigarette per individual. That simply is not enough to show by itself. Simply not enough by itself to show. Did you say less than two cartons of cigarettes? Yes. Is it cartons or packs? Cartons. Okay. Cartons, Your Honor. I think for now, unless the Court has any other questions, I'll conclude this part of my presentation. Thank you, Your Honors. Do you want to cite that case for the record? Of course, of course. Just so... Of course, yes. It's State v. Golden, 2006, Westlaw, 224-2212, August 4th, 2006. And I appreciate the research you did before oral argument. Thank you. Good afternoon, Your Honor. Good afternoon, counsel. May it please the Court. I would first note I didn't receive any motion to add authority filed by counsel. He cited two cases in here this afternoon, which are not cited in either his opening brief or his reply brief. I believe the Court has rules on that. But that aside, his argument that he wasn't proven guilty beyond a reasonable doubt falls for two reasons. One, he's rather assuming that what the State proved was that the defendant was in possession of these drugs and intended to, as he could have been, taking them back to Peoria to repackage and sell. He talks about the fact that, you know, they had money, but nobody was given any money. That's not really what delivery means. Delivery means to transfer possession or to attempt to transfer possession. A delivery can occur without the transfer or exchange of money or without the transfer or exchange of any other consideration. Now, the defendant, the evidence was that the defendant called Mr. Edmonds and said, I'll give you a tank full of gas and $60 if you drive me up to Harvey. So Mr. Edmonds went over, picked up the defendant, who then brought out his girlfriend, and they were going up to Harvey. It was Mr. Edmonds' brother, Marks, who was not invited to go, but he did go. He literally went along for the ride. He was never charged with any offense. Although Mr. Edmonds was, he pled guilty. Ms. Johnson, the girlfriend was, she pled guilty. When they got to Harvey, they entered a home. Ms. Johnson exited the home, came back to the shoebox with two bulk packages of marijuana. She and the defendant went into the kitchen and basically repackaged this. They took it out of the shoebox, wrapped it in aluminum foil, and Ms. Johnson took it out of the house,  Mr. Edmonds wrapped those two aluminum foil packages into a shirt of some sort and sprayed it, doused it with baby powder. Apparently, they think the sniffer dogs can't detect the marijuana through the baby powder. Now, the jury found, based upon this evidence, that the defendant not only possessed these drugs, which, as counsel admits, he's not denying he was in possession of the drugs. He's not denying he was in possession of 203 grams of the drugs. He's just denying that his intent was to deliver. The jury disagreed with this, and I can't recall right now what instruction, jury instruction, the court gave specifically, and I couldn't get a hold of the record after he filed his reply brief to find out. But in his reply brief, and here again today, he's suggesting that they were just going to split these drugs. Well, the truth is, if that was the defendant's intent, then his intent was to deliver the drugs. So Mr. Edmonds or Mr. Marks, whoever else he gave those drugs to, he delivered them to. There's also, in the jury instruction, and this was not presented at trial. I don't believe the defendant argued at trial that his intent was to split these drugs. But at any rate, the jury instruction states that the word deliver, under the definition of delivery for purposes of this offense, includes a constructive transfer of possession, which occurs without an actual physical transfer. When the conduct or declarations of the person who has the right to exercise control over a thing, meaning the defendant has possession, he has the right to exercise control, and he may declare to someone, I'll give you some of this. You know, how many convictions came out of this trip to Harvard? Three. So three people were convicted and took the trip. That's correct. And what were they convicted of? Possession with intent to deliver. All three? The other two pled guilty, yes. The exercise control over this thing is such that to effectively relinquish the right of control to another person. Who were they intending to deliver to? The three people? Each other? I think that's what he's saying when he says split it up. I think the evidence shows that they intended to take it back to Peoria, repackage it in smaller amounts, and sell it to fourth parties, fifth parties, sixth parties. But what I'm saying is that even if you want to believe that they were going to split this up, it doesn't mean that he didn't intend to deliver the drugs. Because if you effectively agree to relinquish the right of control of any portion of this to another person, so then that other person, if he's in constructive possession, there's been a delivery. Were they in joint possession of the drugs? The three? Once they were in the automobile, yes. So they were three in joint possession of them. I think the fourth person was probably in constructive possession, but I think that the other two pretty much exonerated him. I don't know that there was any evidence that he knew what was going to happen and was stuck there. But at any rate, the state did not charge him with any offenses. And the jury had no problem finding him guilty of possession with intent to deliver. They were instructed, unless they're included, to include him in their possession. But that's not the verdict they came back with. I would like you to address the street value fine issue. Okay, I'd be happy to. I know counsel didn't in his opening remarks, but what evidence is there in the record of street value being $2,000? Where did that number come from? I'm not quite sure where that number came from. If the detective had told the prosecutor, I assume that he did, because at trial the state's attorney attempted to get the officer to testify within his expertise about what the street value of this fine would be. The defendant objected to the admission of that evidence, and the judge sustained that objection. It really wasn't relevant to guilt or innocence? Well, I'm not so sure. I'm not so sure it wasn't. But what would have precluded the state at the sentencing hearing from introducing this? Doing it again? I don't know that they were precluded from it, but they're not required to bring that evidence at a sentencing hearing. The law says that you can rely on evidence at trial if it's admitted at trial, which of course it wasn't, because the defendant objected to that. So where did the $2,000 come from? I think what I'm trying to explain is that I think the officer and the state's attorney knew, or he had told the state's attorney what it was, and the state's attorney attempted to elicit that answer at trial, and had that answer, but wasn't allowed to. So the question is, where did the trial judge get the number $2,000? I don't know. I'm suggesting to you that that's where he got it. Then how can we affirm that portion of the sentence when there's no evidence in this record? How can you find plain error when he invited that error? The defendant didn't object at the time that he was sentenced that that mandatory drug assessment fee... That's not an issue for the trial court to determine or the jury to determine during the course of the trial. The information regarding the street value is something the court has to consider when imposing the mandatory punishment. If the state doesn't walk that information into the door, who's waiving or forfeiting that request? I think it's the state. I think there's a misconception here. The law says that the amount of the street value must be based upon the testimony of the police, but it doesn't say at a sentencing hearing. It must be based on the testimony of the police at any proceeding. It could be the trial. It could be any place else. Okay. I understand your argument. I'm not sure I agree, but I understand. Well, that's what the law says. So, in the long and short, you submit to us that there is an absence of any evidence about the $2,000 up in the street value, but that error is not plain error because the defendant at the trial made a legitimate objection and was sustained, or illegitimate objection, which was sustained. But the evidence didn't get in, and the state didn't put it in in the sentencing hearing, and therefore somehow that sort of stops the defendant from wanting a fair sentencing hearing by having evidence. No, what I'm saying is that, first of all, you don't object at the time of sentencing to this drug fine, and neither in your motion to reconsider a sentence. So you've waived it. Now what you're left with is arguing plain error. But I see a little bit of gamesmanship when you want this court to apply plain error to this fee, when, on the other hand, you objected to the admission, the testimony, which would have established what that street value was. Not a sentencing hearing at a trial. Yes. On the merits. The state just dropped the ball. They didn't bring the evidence during the sentencing hearing. Well, and you really want to know the truth. This defendant is never going to pay this assessed fee. The only reason these drug assessment fees are introduced is because they're mandatory. Now, you know, he did object to the admission of the evidence at trial, and like I said, I don't believe the law says that that evidence has to be elicited only at sentencing. It can be elicited at trial. But I still don't think that having done that, you can show plain error. That's a pretty hefty burden to show. Well, the difficulty is there's no basis in the record to support the court's imposition of the $2,000 street value fine. And there's... Because it could have been worth $300 or $3,000 or $30,000. It appears to me that he pulled the number out of thin air because, the reason I asked you, where did that number come from? There's nothing in this record to justify it. And the reason there's nothing in the record is because the defendant objected to it being in the record. You've answered my question. I appreciate your input. Do you have anything further? No, I don't. Justice Carter, any further questions? Thank you. Mr. Boyd? Thank you, Your Honor. I'll address the street value issue very quickly. I don't want to spend too much time on it. Your Honors are right. There was any evidence presented as to the street value, and it was the State's burden to present this. According to statute, at some point during these proceedings, they could have presented this at sentencing. They didn't. Counsel's argument that defendant invited error on this is frankly not well taken. The State could have brought this evidence forward at sentencing, and they didn't do it. And that's the end of the story as far as the street value claim. As far as the more important issue, whether defendant had possession with intent to deliver of his cannabis, one of the things that I think it's important to point out and to reiterate is that according to this new Coots case, and I'll give you the citation. It's Coots, 2012, Bill F. Second, 100592. It's paragraph 36. There isn't any intent to deliver in people sharing drugs that they procured jointly. And all the facts that the State recited, and all the facts that were recited at trial, indicated that these four individuals procured this cannabis jointly. All four of them were in this car and went up to Harvey. It was Ms. Johnson that actually went and procured the cannabis. It was Edmonds and defendant that went into the kitchen and wrapped this cannabis up in tinfoil and put it in the shoebox. It was Mr. Edmonds that sprinkled baby powder on it, wrapped it in his shirt, and hid it in the speaker box. And at a minimum, Marks and his brother was aware of this cannabis because he saw the cannabis. So the evidence is pretty clear that at least three of these folks, and I would argue all four, procured this cannabis jointly. There's no distribution in sharing controlled substances that have been procured jointly. The other thing to point out, one of the other things I'd like to point out here in rebuttal, is counsel made mention, and Officer Schaefer also made mention of this during his testimony, of the fact that the defendant paid for this trip. He paid Edmonds $60 for this trip. It strains Lonsby to suggest that paying somebody money for a trip anywhere is somehow indicative of intent to distribute time for that. People get into taxi cabs all the time and go from point A to point B and pay for that. People take limousines from their homes to the airport and they pay for that. And there's no indication that these folks have the intent to distribute cannabis. So the mere fact that the defendant paid Mr. Edmonds $60 to go up to Harvey is in no way indicative of anybody's intent to deliver anything. And what I'd like to leave the court with here, again, is that we've got 203 grams of cannabis, which Officer Schaefer testified was right on the borderline between a distribution amount and a personal use amount. And that's all the evidence that we've got. That's all the evidence that we've got. And in our view, that simply is not enough to sustain a conviction for possession with intent to distribute. Unless Your Honor has any other questions, I'll finish my presentation. Thank you. Okay, thank you for your time. Thank you for your consideration, Your Honor. You're welcome. We'll take the matter under advisement and confer with our respected colleague before rendering a decision in this case. And I think we are adjourned until the next hearing.